EDMUND C. TOOKER

*v.*

HAROLD C. TOOKER et al., infants by their guardian *ad litem.*

[Submitted September 19th, 1906. Decided October 4th, 1906.]

Testator's will set apart a sum to be invested and the income paid to his parents during their lives. A subsequent clause directed that all the residue be invested for his wife for her life. Provision was then made for legacies to be paid on her death, "the balance of my estate to be invested for the benefit of my father and mother, but, in case they have both died, then all to go to my brother, and at his death what remains to his children—my intention being that after the death of my wife, and my father and mother, that my brother should receive all that remains, and after him his children."—*Held*, that the phrase "what remains" did not show an unlimited power of disposition given to the brother, creating an absolute estate inconsistent with the gift to his children, but the children were entitled to receive, on the death of their father, all that he received.

On final hearing on bill, answer and proofs.

*Mr. Halsey M. Barrett* and *Mr. Edwin B. Goodell,* for the complainant.

*Mr. Harry N. Reeves,* for the defendants.

PITNEY, V. C.

The suit is brought by Edmund C. Tooker against his three infant children to obtain a decree against them declaring the

complainant to be the absolute owner in fee of a considerable fund consisting of personal securities in his hands as surviving executor of and trustee under the last will of Frank H. Tooker, deceased, who was his brother.

The rights of the parties depend upon the true construction of the will of the testator.

The cause has been well argued on each side, the complainant having very properly caused his children to be well and faithfully represented by counsel.

The deceased by his will, which was written wholly by himself, in its second item sets apart a sum of $10,000 to be invested and the interest applied to the support and maintenance of his father and mother during their lives.

By the third item he gave his watch and chain to his nephew, Harold, one of the defendants herein, and his diamond studs to his niece Mildred, also one of the defendants, and to each of them $500.

By the fourth item he gave all his household furniture to his wife, Catherine, "for her sole use and disposal."

Then by the fifth item he directed that all the rest and residue of his estate should be invested for the sole use of his wife during her life, in lieu of dower, the same to include, after their death, the fund previously set aside for the benefit of his father and mother.

It is quite evident that he expected his wife to survive his parents, and he proceeds in the sixth item to direct that on the death of his wife (which occurred before that of his father) $1,000 should be paid to a church in Connecticut and a like amount to a church in Montclair, N. J.

Then comes the clause upon the true construction of which the rights of the parties herein depend, thus—

"the balance of my estate to be invested for the benefit of my father and mother, or either of them, but in case they have both died, then all to go to my brother, Edmund C. Tooker, and at his death, what remains, to his children equally, my intention being that, after the death of my wife, Catherine A. Tooker, and my father and mother, that my brother should receive all that remains, and after him his children."

The claim of the complainant is that under this language the father took an absolute estate, and hence that the bequest over is void.

Now, it is the duty as well as the pleasure of a court, when called upon to effectuate the intent of a testator, to give effect, if possible, to every part of the testator's will.

His desire in this case, that the children of his brother, Edmund, should have his estate at the death of their father is just as clear, on the face of the will, as is his desire that the father should have it. Hence, in my judgment, nothing short of a clear and imperative necessity should prevent the court from giving effect to that desire.

The obstacle which the complainant puts in the way of the accomplishment of this desired result is that an unlimited power of disposition is given to the brother by the will, and that power being coupled with an indefinite gift of the legacy to him creates an absolute estate, which absolute estate is entirely inconsistent with the gift to his children. This inconsistency is based on the old principle that a fee cannot be limited after a fee.

Now, I repeat, that before we come to the unwelcome conclusion that we cannot carry out this part of the will of the testator, we should feel very sure that the important element of an unlimited power of disposition has been intentionally given by the testator in apt words to the complainant, his brother.

In such a case it seems to me that to be in doubt is to be resolved, since, in the absence of a gift of such a power of disposition, the intention of the testator to limit the estate of his brother, the complainant, to a life estate is perfectly clear. ' Quite as clear, in my judgment, as if he had said, in so many words, that his brother was to enjoy the estate for life only.

The particular language in the will relied upon by the complainant for that purpose is comprised in the two magic words, "what remains;" thus "then all to go to my brother, Edmund C. Tooker, and at his death what remains to his children equally." The argument is that these two words, "what remains," necessarily imply an unlimited power of disposition.

It must be conceded that there are authorities which go to that length, and I will take occasion to examine them farther

on, but, of course, we must take the whole will together, and that part upon which complainant relies is immediately followed by a clause of the same sentence in which the testator makes his own explanation of what precedes it, and states what his intention is, as follows:

"my intention being that, after the death of my wife, Catherine A. Tooker, and my father and mother, that my brother should receive all that remains, and after him his children."

Now, it seems to me, there can be no difficulty about the construction of this member of the sentence. He had given certain legacies to be paid after the death of his wife, which he supposed would take place after the death of his parents, hence he used the words "what remains." His brother is to receive all that remains after the death of his wife, his·father and his mother, and after his brother his children. That means, of course, that his children should receive on the death of their father all that their father received.

Now, this is not an instance of two different dispositions of property found in different parts of a will and giving rise to the question which shall prevail, and calling for the application of the rule that the last expressed wish of the testator should prevail, the learning of which is spread through numerous decided cases cited in the books. But it is a gloss or interpretation put by the testator himself in his own language and found in the final clause of disposition in his will. He seems to have thought there might be some misapprehension in what he had already written arising out of the somewhat confused way in which he had dealt with the probability of his wife surviving both his father and his mother and in the use of the words "what remains," and so he deliberately construed his own will in the language last above quoted, and says, in effect, that he did not mean the words "what remains" to refer to the death of his brother, but to the death of his wife.

I might rest the conclusion at which I have arrived on' that explanatory member of the sentence alone. But respect for the very able argument addressed to me by counsel for complainant

induces me to say something as to the proper effect of the words relied upon.

Undoubtedly in construing a will we must strive to give every word effect, and it is in obedience to this canon that the courts have been led in a very few instances to the conclusion that a testator by the use of the words "what remains," or their equivalent, must have contemplated that his estate would be diminished in the hands of the tenant for life, or his trustee for the time being, and from that notion the courts have concluded that the testator must have intended to give the tenant for life a power of general disposition over the principal of the estate.

Now, it seems to me that such a construction is somewhat strained, for it leaves out of view the common knowledge that all personal estates, while being held in trust, are liable to diminution in quantity, not only by the actual cost of their conservation (*Pitney* v. *Everson, 42 N. J. Eq.* (*15 Stew.*) *363*), but by what may be termed ordinary wear and tear and loss by accident and depreciation in the value of investments. So that few trustees of personalty are able, after a moderately long trusteeship, to turn over the estate quite as large as they received it.

In the present case the brother became, in the ordinary course of events, the sole trustee of the fund, and this condition of affairs was plainly contemplated by the testator, and we may well suppose that his brother, while so acting in behalf of himself and his children, might be under the usual disabilities of trustees in respect to maintaining the integrity of the estate, and, naturally, the testator would feel that he ought not to be held to an overstrict account by his children in that behalf.

This consideration, it seems to me, of itself might be quite sufficient to account for the use of the words in question without imputing to the testator the least intention that his brother should have a complete power of disposition.

Turning now to the adjudged cases in England, we find them all, previous to 1849, collected with great industry and commented upon by counsel in the case of *Constable* v. *Bull;* before Vice-Chancellor Knight-Bruce, the best report of which is found in *13 Jur. 619.* It is also reported in *3 De G. & S. 411,* and *18 L. J. Eq. 302.* There testator gave all his property of every

kind to his wife for her sole and separate use and benefit, and then in the next separated sentence he directed that "at the decease of my said wife *whatever remains* of my said estate and effects shall go to and be equally divided, share and share alike, between" several persons, naming them. She died testate of a will and possessed of considerable of the personal estate which she received from her husband. The question was between her executor and the persons named as beneficiaries at her death. The arguments are given in the *Jurist* at length and all the authorities up to that date were dealt with. The vice-chancellor refused to construe those words "what remains of" as being sufficient to give the wife a power of disposition. He says: "There are several theories which might be attributed to these words, either of which would be inconsistent with construing them so as to give the widow the power to spend or give away or dispose of the property in question."

There was an inquiry instituted after that decision as to who were entitled under what may be termed the residuary clause of the testator's will. The cause came on for hearing upon the report of the master on that inquiry, and the whole question was reopened and argued before Vice-Chancellor Sir James Parker, *22 L. J. Ch. 182,* and he adhered to the ruling of Vice-Chancellor Knight-Bruce.

This case was followed by Vice-Chancellor Sir Charles Hall in *Bibbens* v. *Potter, 10 Ch. Div. 733 (1879).* There was there a gift by the testatrix to her sister for her own use and benefit absolutely, and then followed, by codicil, a provision that "after the death of my sister I give, devise and bequeath all property of mine which may then be remaining" to her brother and another, and it was held, on the authority of *Constable* v. *Bull, supra,* and *In re Adams' Trust, 11 Jur. (N. S.) 961,* that the gift over was good notwithstanding the words "which may then be remaining."

*In re Adams' Trust* came before Lord-Justices Knight-Bruce and Turner, on appeal from the master of the rolls, Lord Romilly, and is in the same line as *Constable* v. *Bull.*

Some of the cases supporting the result in *Constable* v. *Bull* are cited at length by me in *Bryan* v. *Bryan, 61 N. J. Eq. (16 Dick.) 45* (at *pp. 53, 54*). One of them (not cited by me) reported in

a note to *1 Durnf. & E. 437,* is *Hands* v. *Hands,* decided by the master of the rolls, June, 1782. There the testator gave all his property, consisting of personalty, to his wife, and then declared his will to be that his wife should at her decease give unto and amongst his relations *what should remain* of what he had thereby given and bequeathed unto her, except £400, which she should be at liberty to dispose of as she should think fit. The master of the rolls held that she took a life estate merely, and on a bill filed by the next of kin against her he directed that she should give security, &c., providing for the protection of the next of kin.

I find in the later English decisions no disposition to disturb the principle of the judgment in *Constable* v. *Bull* and *Bibbens* v. *Potter.*

I will now notice the line of cases which are relied upon to establish a contrary result.

What seems to be considered as a leading case is *Attorney-General* v. *Hall, Fitz G. 314,* July 5th, 1731, before the lord-chancellor (Hardwicke), the master of the rolls and Chief-Baron Reynolds. The clause of the will there considered is as follows:

"*Item.* I give and bequeath all my real and personal estate unto my son, Francis Hall, and to the heirs of his body, to his and their use, to be paid unto him in three years after my death, and during that time I make Sir Isaac Newton executor of this my will, and after the said three years expired, I do appoint that my said son Francis shall be executor, and if my said son Francis shall die, leaving no heirs of his body living, then I give and bequeath so much of my said real estate and personal estate as my said son shall be possessed of at his death to the Goldsmith's Company of London,"

in trust for several charitable uses mentioned in his will; "but my will is that the company shall not give my said son any disturbance during his life." The testator dies, and after three years Francis Hall takes upon him the execution of the will, and in some time after suffers a common recovery of the real estate. Afterwards he makes his will, and the defendant, his then wife, executrix thereof, and then dies without issue. The arguments of counsel are given at great length, but the opinion of the court (at *p. 321*) is as follows: "The court was unanimous that the limitation over was void, as the absolute ownership had been

given to F. H., for it is to him and the heirs of his body, and the company are to have no more than he shall have left unspent, and therefore he had a power to dispose of 'the whole, which power was not expressly given to him, but it resulted from his interest. The words that give an estate tail in the land must transfer the entire property of the personal estate, and then nothing remains to be given over. The bill was dismissed."

Here it is manifest, from this very incomplete report of the opinion—and Mr. Fitz-Gibbons was not distinguished for accuracy or reliability as a reporter (see *The Reporters,* by John William Wallace, *p. 263*)—that the judges, though they may have relied upon the words "as my son shall be possessed of at his death," yet they also relied upon the absolute character of the transfer of the personal property to him without any trustee to preserve it. And then there is the declaration that the devisee in remainder "shall not give my said son any disturbance during his lifetime," which tends to support the idea of a power of disposition.

That case was cited and dealt with in *Constable* v. *Bull.*

In this country we find the subject first arising in *Ide* v. *Ide, 5 Mass. 500 (1809)*, in which only real estate was involved.

There the devise was to "Peleg Ide and to his heirs and assigns forever." This was in itself a gift in fee-simple. But in the latter part of the will is found these further words: "And further, it is my will that if my son Peleg shall die and leave no lawful heirs, *what estate he shall leave* to be equally divided between," &c.

It will be perceived that the first gift to Peleg was in nowise general or indefinite in its character, but was a gift in fee-simple, and this distinguishes the case from the rule laid down by Justice Depue, in *Downey* v. *Borden, 36 N. J. Law (7 Vr.) 460* (at *p. 466*), in these words: "As a rule of construction, the principle is entirely settled that where lands are devised in the first instance *indeterminate as to the quantity of the estate,*" &c.

It is further to be observed that the devise over is not of the estate devised to Peleg, but of what estate he shall leave. This was an attempt by the testator to devise land which, peradventure, Peleg himself might have acquired in his lifetime. And it

is further to be observed that the suit was not against Peleg's devisees or heirs-at-law, but against persons to whom Peleg had conveyed the premises in fee-simple. Chief-Justice Parsons (at *p. 504*) treats the limitation over as if it was of the estate devised to Peleg, and he cites *Attorney-General* v. *Hall,* and held that Peleg took a fee-simple.

I am unable to construe that case as governing the present, even if we did not here have the explanatory clause to which I have referred.

The next case to which I refer is *Jackson* v. *Bull, 10 Johns. 19 (1813).* In that case the devise was, as in *Ide* v. *Ide, supra,* to his "son Moses and to his heirs and assigns forever," and by a subsequent clause, "in case my son Moses should die without lawful issue, the said property he *dies possessed of* I will to my son Young."

It is here to be observed that the devise over is quite similar to that in *Ide* v. *Ide,* and the court held that Moses took a fee-simple, and relied on the case of *Attorney-General* v. *Hall, supra.*

Coming now to our own state, we have the case of *Naundorf* v. *Schumann, 41 N. J. Eq. (14 Stew.) 14.* There the will of Adam Rienaker was brought before Chancellor Runyon, in which the devise was as follows:

"My will and desire is that all my property, both real and personal, shall be for the sole use and benefit of my wife Julianna after my decease, and in the event of her death, then what shall remain to be disposed of in the manner following,"

giving his executors power to convey and to divide the proceeds among seven persons named. The executors therein named were, during Mrs. Rienaker's life, discharged and the complainant became administrator *de bonis non cum testamento annexo.*

After Mrs. Rienaker's death he filed his bill making only the residuary devisees parties, and asking for construction.

Chancellor Runyon held that the language used gave to the widow the use only of the property during her lifetime, and attributed the use of the qualifying words "what shall remain"

to the fact that some of the personal property was of a consumable character.

But unfortunately the widow in that case had joined with the executors and one or two of the persons named in remainder in a deed of conveyance of a piece of real estate to a Mrs. Rosenfels, who had paid for the property purchased, and expended money in building a house thereon, of which she was in peaceable possession. The effect of the decision of the chancellor was to destroy her title, and she thereupon filed a bill to quiet her title, which case came on for hearing before Chancellor McGill (*Rosenfels* v. *Schumann, 45 N. J. Eq. (18 Stew.) 383*), who came to the conclusion, under all the circumstances, that the use of the words "what shall remain" implied a power of disposition and gave the widow a fee-simple, and enabled her to pass the title to Mrs. Rosenfels. We have here, then, two constructions, put upon the same will by two successive chancellors, which are diametrically opposed to each other, and I feel constrained to say that, considering the great hardship of Mrs. Rosenfels' case, and the pressure it must have brought upon the learned Chancellor McGill, I think that the construction given by Chancellor Runyon is the true one.

One other case in New Jersey deserves mention. *Wilson* v. *Wilson, 46 N. J. Eq. (1 Dick.) 321.* There the testator gave to his "daughter Helena all his estate, both real and personal, to her, her heirs and assigns forever." In a subsequent sentence he says:

"In case my said daughter Helena should die without leaving any heir or heirs, then it is my will that after her decease I devise the *remainder and residue of my estate, whatever it may be*, at the decease of my daughter,"

over to Elmira Norton.

The bill, as here, was filed by the devisee, the daughter, against her children, to determine the present title, and Chancellor McGill, after dealing with the argument of the counsel for the complainant based on the words "whatever it may be at the decease of my daughter," says: "If the conclusion thus contended for be sound, and there be a devise in fee to Helena, with

power of disposition, the intention of the testator that she shall have an absolutely unrestricted property becomes clear, and the limitation over would be held to be inconsistent with that estate and void [citing *Rosenfels* v. *Schumann*]. The power of disposition or absolute dominion, however, must be given either *by express words or by necessary implication.* The will must be construed, if possible, so that *all parts of it may stand,* hence *if the expression depended upon be susceptible of a fair interpretation that will permit the limitation over to stand, that interpretation should be given to it.* * * * By the use of the words 'whatever it may be at the decease of my daughter,' the testator may have had in mind changes wrought by investment, for it is as likely that he contemplated a change in the character or nature of the residue as he did a change in its amount. If he contemplated a change in amount, the change may have been increase as well as decrease, and if decrease, the apprehended cause of decrease may have been that which would have possibly been brought about by accident. * * * Nothing unequivocally points to a power of disposition, and I am therefore not justified in saying that it exists. My conclusion upon the whole will is that the daughter took the farm in fee, *subject to the executory devise in favor of Elmira Norton.*"

I think this reasoning is sound and just, and decides the present case.

The present case is clearly distinguishable from that line of cases which follow *Downey* v. *Borden, 36 N. J. Law (7 Vr.) 460,* and are commented upon and followed in *Tuerk* v. *Schueler, 71 N. J. Law (42 Vr.) 381,* where an express power of disposition is given, and the courts have felt constrained to refuse to give effect to the testator's will in a devise over because it was inconsistent with the previous gift in fee.

There is another remark which I feel constrained to make. Shortly after the death of the husband, his widow, Catherine, and his father, Niles H. Tooker, and the complainant applied to the chancellor, in a petition signed by each of them and verified by the complainant herein, for an order of sale for the mansion house and grounds of which the testator died seized, in which petition they state the persons who are entitled to pros-

pective estates therein, among whom are named two of the defendants herein and such of the children of the complainant as may be thereafter born. That petition was referred to Master Byington, who reported, *inter alia,* that the complainant herein "has a prospective estate for life in the premises, contingent upon his surviving both Catherine A. and Niles H. Tooker, and that the children of the complainant then living, and such as may thereafter be born, or their descendants, will become the owners in fee-simple of said land upon the termination of all of said life estates." That report was confirmed and the property was sold, and the proceeds of the sale, amounting to some $15,000 or $16,000, are, in pursuance of the statute authorizing the sale, held under the control of this court.

It seems to me that that proceeding and the conclusion arrived at by the learned master, and acquiesced in by all the parties, including the complainant, should not be lightly disregarded.

I will advise a decree dismissing the bill, with costs, and, as very properly suggested by the counsel for complainant, a counsel fee to counsel of defendants.