J. S. and P. W. BRAWLEY v. JOHN COLLINS.

*Wills— When the term "Property" is restricted to Personal Estate.*

The testator provided "that all property, money and effects, willed by me to my wife, that may be left at her decease, shall be equally divided," &c.; *Held*, that the word "property," being associated with "money and effects" and taken in connection with other provisions of the will, has a restricted import and does not embrace the lands devised.

(*Foster* v. *Craige*, 2 Dev. & Bat. Eq., 209; *Williams* v. *Parker*, 84 N. C., 80; *Ex-parte Champion*, Busb. Eq., 246, cited and approved).

EJECTMENT tried at Fall Term, 1881, of IREDELL Superior Court, before *Seymour, J.*

The plaintiffs claim an undivided share in the land described in their complaint, and in the defendant's possession, under the will of Stephen Parker, their grandfather, the dispositive provisions of which, so far as they assist in the interpretation of the clause whose meaning is in dispute, are as follows:

2. It is my will that should my beloved wife, Mary, survive me, she should have a decent maintenance off all my lands during her natural life-time.

3. It is my will that my son, Solomon, have fifty acres of land off the lower end of my land, it being a purchase I made from Cyrus Hutchison.

4. It is my will that my wife, Mary, have all the balance of

my old tract of land on which I now live, including an entry made, adjoining Robert Hibbett's and a purchase made from Edwin Falls.

5. It is my will that my wife, Mary, have all of my stock of horses, cattle, hogs and sheep, excepting my sorrel mare, colt and a choice milch cow, which I will to my daughter, Betsy.

6. It is my will that my wife, Mary, shall have all my household and kitchen furniture, and all farming utensils, gears, tacklings and tools of every kind, and my wine-mill and loom.

7. It is my will that my daughter, Betsy, have seventy-five acres of land, including an entry of fifty acres, made by me, where Joseph Parker now lives, and twenty-five acres of my Bell tract, adjoining said entry, so as to make the aforesaid quantity of seventy-five acres.

8. It is my will that my grandson, Stephen Parker, Franklin Parker's son, have all the balance of my Bell tract of land, with my son, Franklin Parker, and his wife, Celia Parker, to have the use of said land during their life-time. I further will that my son, Franklin, have my wagon.

9. It is my will that my daughter, Betsy, have her bed and bed-clothes, two wheels, one chest and other property heretofore claimed by her.

10. It is my will that my wife, Mary, have all money and effects due me, after my just debts being paid, together with all property not named in this will.

11. It is my will that all *property*, money, and effects willed by me to my wife, Mary, that may be left at her decease, shall be equally divided between my daughter, Betsy, and grandsons, Stephen Brawley and Peter W. Brawley.

The plaintiffs assert title to the land in dispute as a limitation in remainder to them and their aunt in equal parts, after the death of the testator's wife, who by reason thereof had only an estate for her life therein, and this results, it is contended, from the use of the word *property* in the last recited clause, which

comprehends alike real and personal estate.    The court was of opinion and ruled that the term has a more restricted import, and did not embrace the lands devised, in submission to which the plaintiffs took a nonsuit and appealed.

*Messrs. Reade, Busbee & Busbee,* for plaintiffs. ·

*Messrs. Scott & Caldwell, A. S. Merrimon* and *Robbins & Long,* for defendant.

SMITH, C. J., after stating the case.    The only question for us to determine in passing on the appeal is as to the correctness of this construction of the clause, and the sense in which the word is used in this connection by the testator.

Considered by itself, the term *"property"* undoubtedly embraces real and personal estate, *Foster* v. *Craige,* 2 Dev. & Bat. Eq., 209, and such must be its meaning unless restricted by the context, or shown by other parts of the instrument, not to have been so intended by the testator.    The leading object in the interpretation of all testamentary papers is to ascertain and give effect to the purpose of the testator, and to find out in what sense the words were used by him.    The word "property" is found in the 9th, 10th and 11th clauses of the will, and, in the two former, evidently employed to designate personal things.    In the 10th clause, it follows an enumeration of certain small articles of household furniture, and is plainly intended to cover such articles as are not specifically mentioned, but are of the same general class with those that are.    In the succeeding clause, it is in association with "money and effects," and is, as in the preceding, necessarily confined to personalty, since "all the property not named in the will" must exclude realty which is named and devised.

The 11th clause also associates "all property, money and effects," and as the other disposes of what had been omitted, this disposes of such as had been specified and given to the widow, which remained at her death.    The words are evidently used in

the same sense in both paragraphs, and bear an obvious relation to each other. Unless the testator intended to limit the significance and scope of the expression as used in both clauses, why should he have added the qualifying words, "that may be left at her decease," in the latter? Manifestly, as land is not subject to a contingency, since it *must*, not *may be*, left, when the life estate expires, he intended such goods as might be destroyed or consumed by the preceding owner, but in fact are not, but remain for the bequest in remainder to operate upon. *Williams* v. *Parker*, 84 N. C., 90.

The integrity and consistency of the will, as a whole, and of its constituent parts, should be upheld when it can be done upon any reasonable interpretation, instead of putting a construction upon its separate provisions that make a direct repugnancy. The wife has secured to her a maintenance out of *all the lands*, and the home place where she and her husband resided is devised in fee. This estate would be cut down to a life-estate if included in the limitation over after her death, and put upon the footing of the clause which charges her maintenance in general terms upon all his lands.

Then the close association of the word itself with "money and effects" in both clauses indicates a common and the same meaning in each, and our duty is not to inquire what it may comprehend, but what it does signify, and in what sense the testator uses, and when this is satisfactorily ascertained from an inspection and comparison of the several provisions of the instrument, the construction must be adopted which carries out the intent.

It is seldom that we can derive aid from an examination of adjudicated cases, as we have had occasion before to remark, in consequence of the great diversity of terms in which a testator expresses himself, and hence each case must be determined by itself, keeping in view the leading purpose to ascertain the intention from the language and give it effect when practicable. The cases cited are illustrations of the rule referred to, which restricts

the meaning of a general word by those that follow and require it. See *Ex-parte Champion,* Busb. Eq., 246.

We, therefore, concur with His Honor that the plaintiffs do not derive title to any share in the land in suit under the 11th clause of the will, and the judgment must be affirmed.

No error.                                        Affirmed.