ARGUED AND DETERMINED IN THE

# SUPREME COURT

OF

# NORTH CAROLINA

## FALL TERM, 1911.

E. T. HERRING AND WIFE, BETTIE, v. CARRIE WILLIAMS AND JOHN H. GREEN.

(Filed 23 December, 1911.)

1. **Wills—Construction—Estates—Remainder—Intent—Real and Personal Property—Possession at Death of First Taker.**

Giving effect to the intent of the testator from the language employed by him in the will: *Held*, a devise and bequest to A. of real and personal property "to have and to hold during her natural life," and at her death "the said property or so much thereof as may be in her possession at the time of her death is to go to B., her heirs and assigns forever," gave A. only a life estate in the lands, with remainder to B. in fee.

2. **Same—Consistency.**

When there is a devise and bequest of real and personal property to A. for life, with a limitation after the death of A. that the "said property or so much thereof as may be in her possession at the time of her death is to go to" B., her heirs and assigns forever, the words, "or so much thereof as may be in her possession at the time of her death," are construed, for consistency, to refer only to the personal property bequeathed, and not to the realty, which is of a permanent nature.

3. **Wills—Construction—Power of Disposition—Implication.**

The intention of the testator to create the power of disposition in the devisee must clearly appear from the language of the will, and it will not be implied from language entirely consistent with the devise to him of a life estate.

158—1

4. Wills—Construction—Estates—Power of Disposition—Reference
    —Deeds and Conveyances.

> A deed made by the devisee to a life estate, with power of disposition, must refer to the power contained in the will to convey the fee, and in the absence of such reference only the life estate is conveyed.

ALLEN, J., concurring; WALKER and HOKE, JJ., dissenting.

THIS is a petition to rehear this cause, reported in 153 N. C., 232, where the facts are fully stated.

*Bunn & Spruill for plaintiffs.*
*T. T. Thorne and J. C. L. Harris for defendant.*

BROWN, J. We have given this case a reëxamination and have been forced to the conclusion that our former construction of the will of the testator Williams was erroneous. The writer holds himself as much responsible for the conclusion reached in the first opinion as if he had written it himself, instead of the learned and able judge whose name is prefixed to it. But further examination having convinced us that we were in error, it is our duty to say so and to hold that the original judgment of his Honor, *Judge Guion,* is correct.

The facts are fully and accurately stated in the first opinion. By reference to the report of the case it will be seen that the defendant Carrie Williams, widow of the testator, executed an ordinary deed in fee to her codefendant Williams, without any reference in the deed whatever to any power conferred by the will.

This is an action by the remainderman, Bettie Meton or Melton, the *feme* plaintiff, against Green for waste, damages, etc., for wrongfully cutting all the timber from the land for purposes of sale only.

It is said in the former opinion of the Court in this case that "The primary purpose of the courts, when a will is presented for construction, is to ascertain the intention of the testator from the language used by him." And in determining this question the courts hold, as pointed out by *Justice Manning,* that the rules of construction require that all the words used by the testator shall be given effect, "unless they are in themselves

meaningless, or so vaguely expressed a purpose that no definite
intention can be inferred, or are plainly inconsistent with an
otherwise clearly expressed intention, or are repugnant to
some established rule of law." It is in our application of this
latter principle to the will presented for construction that we
now think we fell into error in the decision of this appeal.
We gave to the words "or as much thereof as may be in her
possession at the time of her death" an effect which, after fur-
ther consideration and investigation of the authorities, we do
not think can fairly be sustained. The will of the testator,
William R. Williams, contained the following language: "I
give, devise, and bequeath unto my beloved wife, Carrie Wil-
liams, all my property, real and personal and mixed, of what
nature or kind soever, and wherever the same shall be at the
time of my death, to have and to hold during her natural life,
and at the death of my wife, the said Carrie Williams, the said
property, or as much thereof as may be in her possession at the
time of her death, is to go to Bettie Meton, her heirs and
assigns forever."

In construing this will we held that the use of the words, "or
so much thereof as may be in her possession at the time of her
death," conferred upon Mrs. Williams a power of disposition
and thereby enlarged her life estate into an estate in fee in the
event she should exercise such power. Guided now by that
cardinal rule for the construction of wills—the intention of
the testator—we are of opinion that it was the intention of Mr.
Williams to give his wife merely a life estate, with remainder
to Bessie Meton in fee.

In order to give expression to every word used by the testa-
tor, we are not required to hold that the language quoted above
refers to real property, but can restrict it to the personalty of
the testator, and such restriction is sustained by both reason
and authority, because it avoids inconsistency in the provisions
of the will and maintains its integrity. Adopting this con-
struction, we hold that the interest of Mrs. Williams, the wife
of the testator, in the real estate is fixed by the specific lan-
guage of the will, "to have and to hold during her natural life."

It is said in American and English Ency. of Law, vol. 30,

pages 737-738, that: "Where the quantity of the estate is de-
vised definitely and specifically, the rule that a devise coupled
with an unlimited power of disposition and control carried an
absolute interest in the property has no application, and only a
life estate coupled with a power of disposal passes. This
power, it has been adjudged, is only coextensive with the estate
which the devisee takes under the will." And the same text
contains this statement: "It is clear, however, that by appro-
priate expressions of intent the power will not refer merely to
the life interest of the first taker, but will, give him a life estate
coupled with a power to dispose of the entire estate absolutely."
This latter statement is sustained by *Troy v. Troy,* 60 N. C.,
624, in which property was devised to the wife for life, with
remainder to testator's son, and the wife was by express terms
given power to sell all or any part of the property in the exer-
cise of her judgment, and other expressions in the will indicated
a clear intention on the part of the testator to confer upon his
wife a general power of disposition and to enlarge the life
estate created by the will. Referring to this power, *Chief
Justice Pearson* says that it is "a power appurtenant to the life
estate, and the estate which may be created by its exercise will
take effect out of the life estate as well as out of the remainder."

This case is not authority for the contention that the lan-
guage in the will before us should be so construed as to give
Mrs. Williams a general power of disposition and thereby em-
power her to convey the real property in fee. The intention
to confer the power was clearly expressed in *Troy v. Troy,*
and the question of the establishment of such power by implica-
tion was not presented. The decisions in other courts are to
the effect that the intention to create the power of disposition
must clearly appear from the language of the will and will not
be implied from language entirely consistent with the special
reference to the life estate; and in that view we concur.

In considering a case in which the testator used the words
"the remainder that is left," the Supreme Court of Missouri
says: "It is needless to say that an intention clearly expressed
in a will should not be defeated, except by some inflexible rule
of law or public policy, unless a wholly inconsistent intention

is manifest upon reading the entire instrument. This is particularly true when the inconsistency is raised by implication only. The implication to have such effect should be very conclusive." In *Wardner v. Baptist Memorial Board,* 233 Ill., 608, it is held that the use of the words "all that remains of the property" did not manifest an intention to create a power in the life tenant to dispose of the whole estate, the Court saying: "It is a general rule in all cases where by the terms of the will there has been an express limitation of an estate to the first taker for life and a limitation over, with general expressions apparently giving the tenant for life an unlimited power over the estate, but which do not in express terms do so, that the power of disposal is only coextensive with the estate which the devisees take under the will, and means such a disposal as the tenant for life could make, unless there are other words clearly showing that a larger power was intended." And in *Giles v. Little,* 104 U. S., 291, the testator's property, real and personal, was left to his wife with the provision that "if she should marry again, then it is my will that all the estates herein bequeathed, *or whatever may remain,* shall go to my surviving children, share and share alike." It was contended that there are words in this clause of the will which imply an absolute power of disposition and give to the children only what may remain undisposed of in the wife's hands at the termination of her estate. "The contention," says *Mr. Justice Wood,* "rests upon the words 'or whatever may remain,' and is that they imply that a part or all of the estate might be absolutely disposed of by the wife during her widowhood. If the purpose of the testator in the disposition of his property is what the other parts of his will clearly indicate, then these words cannot be construed to change that purpose. They can have operation without giving them that effect. He was seized of real estate and possessed of personal property. Both were included in the devise to the wife, and she was to have the enjoyment of both during her widowhood. The use of many species of personal property necessarily consumes it. The words under consideration may, therefore, fairly be construed to refer to the personalty, and the entire clause to give to his

children a remainder in the real estate and whatever of the personalty was not consumed by the widow during widowhood." *Smith v. Bell,* 6 Peters, 68, and *Bramwell v. Cole,* 136 Mo., 201, are to the same effect.

The case of *Green v. Hewitt,* 97 Ill., 113, strongly supports the views expressed in the foregoing cases. The following language was used by the testator in that case: "I give and bequeath to my beloved wife . . . the farm on which we now reside . . . also all my personal property of every description, so long as she remains my widow; at the expiration of that time the whole, or whatever remains, to descend to my daughter." It was held that the wife took a mere life estate in the entire gift. The Court says: "The misapprehension of the legal effect of the devise doubtless grows out of the use of the expression 'whatever remains' by the testator, in limiting the remainder to his daughter. The use of that expression is of no vital significance, and cannot be permitted to override the clearly expressed intention that the widow should take a life estate only. . . . It had reference to the anticipated condition of the personal estate when it would, under the limitation, pass into his daughter's hands. And this is all the significance the expression has." See, also, *Thompson v. Adams,* 205 Ill., 552, a more recent decision by the same Court.

In *Russell v. Werntz,* 88 Md., 210, the testator gave the residue of his property to his wife "to hold and dispose of as she may see fit, while she remains single, and at her death or marriage *the remaining property* is to be equally divided between my two daughters." The Court held that the widow took only a life estate in the real property, with remainder to the daughters, and that she had no power to dispose of the same in fee. "But it is contended," says the Court, "that the words 'the remaining property' should be regarded as indicating that the testator intended that the appellant should have the right to diminish the corpus of the estate. But we do not accept this view. The will, evidently, was not drawn by one accustomed to the preparation of such instruments. The words employed were not chosen with regard to their technical meaning. The property that passed under the second item comprehended both

realty and personalty. All of it was liable to waste or decay; some portions of it doubtless would deteriorate by its use and other articles were of such nature that their use was their consumption. In view of the general and particular intents of the will, it is not straining the construction of these words to regard them as indicating the intention of the testator that his widow should not be accountable for such loss or waste as might result from her personal enjoyment of the property." In *Cox v. Shines,* 125 Pa. St., 522, the testator gave to his wife the residue of his estate for life, and after his death all of said property, or "so much as may remain unexpended," to his children. The Court in disposing of the appeal said: "We are satisfied that her estate in the lands of the testator is for life, and that she had no power, express or implied, to dispose of any interest therein." A similar ruling was made in *Taylor v. Bell,* 158 Pa. St., 651.

The English cases, which are reviewed by the New Jersey Court of Chancery in *Tooker v. Tooker,* 64 At., 806, will be found to sustain our conclusion that the words used in the will before us are not sufficient to create power to dispose of the real property of the testator in fee. *Constable v. Bull,* 18 L. J. Eq., 302; *Bibbens v. Potter,* 10 Ch. Div., 733; *In re Adams Trust,* 11 Jur., N. S., 961.

The view that the language of this will, which it is contended creates a general power of disposition, refers to the personal property that may be in Mrs. Williams' possession at the time of her death, finds direct support in *Williams v. Parker,* 84 N. C., 90, in which the devise was in the following language: "I give and bequeath to my wife, Polly Williams, and my granddaughter, Sarah Jane Williams, all my land whereon I now live, and all my personal property of every order, during my wife Polly's lifetime, and at my wife Polly's decease, if there should be any property or money left, then I devise and bequeath," etc. It was held by this Court that the property referred to as being left was personal property and did not include the real estate. This case is cited and approved in *Brawley v. Collins,* 88 N. C., 605, in which the following clause appeared in the will under consideration: "It is my will that

all property, money, and effects willed by me to my wife, Mary, that may be left at her decease shall be equally divided between my daughter Betsy, and grandsons, Stephen Brawley and Peter W. Brawley." The plaintiffs, the grandsons referred to in this clause, asserted title to the land in dispute as a limitation in remainder to them and their aunt in equal parts, after the death of the testator's wife, contending that the use of the word "property" included real and personal estate. This Court in an opinion by *Chief Justice Smith* rejected this contention and held that it was the intention of the testator to limit the scope of the expression "all property, money, and effects that may be left at her decease" to personal property. *Chief Justice Smith* says: "Manifestly, as land is not subject to a contingency, since it *must,* not *may,* be left when life estate expires, he intended such goods as might be destroyed or consumed by the preceding owner, but in fact are not, but remain for the bequest in remainder to operate on." The Court was guided in that case by the intention of the testator, and at the same time all the language of the will was given effect, and we accomplish. a similar result in the case before us by holding that the words "or as much thereof as may be in her possession" refer only to personal property, thereby preventing the repugnancy that arises from a construction by which the will is held to create a life estate with remainder over and in the same sentence grants a power by which the life estate may be enlarged into a fee and the remainderman disappointed. As the Court says in *Brawley v. Collins, supra,* our duty is not to inquire what the words may comprehend, but what do they signify, and in what sense are they used by the testator, and "When this is satisfactorily ascertained from an inspection and comparison of the several provisions of the instrument, the construction must be adopted which carries out the intent."

We have not deemed it necessary to review the authorities cited in our former opinion. Many of them will be found to fall within one of two classes, both of which are readily distinguishable from our case: first, cases in which there is a devise for life with language which expressly gives the devisee a general power to dispose of both real and personal property, and,

second, cases in which the devise is not limited to a life estate, but the property is devised absolutely, with a provision that what remains at the death of the devisee shall go to certain designated persons. The cases of *Troy v. Troy, supra,* and *Parks v. Robinson,* 138 N. C., 269, fall within the first class.

There is a point made by the plaintiff, which we overlooked, which seems to us to be conclusive of her right to recover damages as against defendant Green. If we should concede that the language of the will should be so construed as to confer upon Mrs. Williams the power to dispose of the real property, such construction would not defeat the plaintiff's right to recover in this action against her grantee, Green. The deed to the defendant Green by Mrs. Williams does not purport to have been made in the exercise of the power of disposition; it contains no reference whatever to such power, and, upon a well-settled principle of law in this Court, the deed could not convey an estate in fee. The will, by language that is unequivocal, gives Mrs. Williams a life estate in her husband's property, real, personal, and mixed, and her deed, in the absence of any reference to the power of disposition, which she claims is conferred by the will, is held to convey only her life estate. "When the donee of a power to sell has an estate of her own in the property affected by the power, and makes a conveyance of the property without reference to the power, the construction established by the decisions is, that she intends to convey only what she might rightfully convey without the power." *Towles v. Fisher,* 77 N. C., 440; *Exum v. Baker,* 118 N. C., 545. And "the intention to execute the power must be apparent and clear, so that the transaction is not fairly susceptible of any other interpretation; and if it be doubtful under all the circumstances, that doubt will prevent it from being deemed an execution of the power." *Carraway v. Moseley,* 152 N. C., 353. We are of opinion, therefore, that it was properly held in the court below that the deed from Mrs. Williams to the defendant Green conveyed only her life estate.

In view of the fact that this opinion affirms the judgment of the Superior Court in favor of the plaintiff, we have examined the other exceptions in the record and find that they are without

merit. It was not necessary to consider them when the case was originally before the Court, because the main question was decided in favor of the defendant who brought the appeal to this Court.

Petition allowed.

ALLEN, J., concurring: Petitions to rehear, except as to the time of filing, are regulated by rules adopted by this Court, and not by statute, because a statute cannot be suspended, and a rule may be, if the justice of the cause requires it. They are for convenience and to aid in the attainment of justice, and not to perpetuate a wrong.

If, therefore, I come to the conclusion that a decision of this Court is erroneous, and that it unjustly deprives a citizen of his property, I shall favor a reversal of the decision, although no fact has been overlooked, and no new authority can be found.

Entertaining this view, I feel that it is proper for me to consider the questions presented by the petition, and in the outset it is well to state the facts.

In August, 1902, W. R. Williams died, seized in fee of the land in controversy and of a town lot, leaving a will, in which he disposed of his property as follows:

"I give, devise, and bequeath unto my beloved wife, Carrie Williams, all my property, real and personal and mixed, of what nature or kind soever, and wheresoever the same shall be at the time of my death, to have and to hold during her natural life, and at the death of my wife, the said Carrie Williams, the said property or as much thereof as may be in her possession at the time of her death, is to go to Bettie Meton, her heirs and assigns forever.

"And I do nominate, constitute, and appoint my said wife the sole executrix of this my last will and testament, hereby revoking and making void all and every other will or wills at any time heretofore made by me, and do declare this my last will and testament."

Shortly thereafter the devisee, Carrie Williams, executed a deed to the defendant Green, her brother-in-law, purporting to convey the town lot in consideration of $700, which the defend-

ant alleges in his answer he paid to her, and on 23 February, 1903, she purported to convey to said defendant in fee the tract of land in controversy, in exchange for a town lot conveyed to her in fee.

The deed to the defendant does not refer to any power conferred by the will, and the only consideration to support it is the execution of the deed to her in exchange therefor.

W. R. Williams and wife had no children, and Bettie Melton, now Bettie Herring, is their foster child, reared by them since she was ten weeks old.

It is true that the intention of the testator should be gathered from the will and the attendant circumstances, but it should be clear and unmistakable before it is held that one who takes a life estate under the will can, within six months after the death of the testator, sell one of the two pieces of land devised, and hold and use the money, and can exchange the other for other land and own that in fee simple, and thereby defeat the interest of the remainderman.

I concur in the construction placed upon the will in the opinion of *Mr. Justice Brown,* but if by any interpretation a power of disposition is conferred on the life tenant as to the land, it could only be exercised when necessary for support and maintenance, which does not appear here.

The testator gave to his wife a life estate in the land and personal property, and to his foster child an estate in remainder, and he must have intended both to take effect.

He appointed his wife executrix, and knew his personal property would be in her possession, and he also knew that it might be consumed or destroyed, and that in all probability some of it might not be in her possession at her death, and it seems to me that a reasonable construction of the language, "or as much thereof as may be in her possession at the time of her death," is that it refers to the personalty. When there are found two species of property, the one technically and precisely answering the description in the devise, and the other not so exactly answering that description, the latter will be excluded. *Bolick v. Bolick,* 23 N. C., 248.

I·will not undertake to review the authorities supporting this view, as they are stated with clearness and accuracy in the opinion of the Court.

I also think it was necessary for the deed to refer to the power.

It is said in Kent, vol. 4, p. 335: "The general rule of construction, both as to deeds and wills, is that if there be an interest and a power existing together in the person, over the same subject, and an act be·done without a particular reference to the power, it will be applied to the interest and not to the power," and this is cited with approval in *Exum v. Baker,* 118 N. C., 545.

The case of *Towles v. Fisher,* 77 N. C., 438, I think a direct authority on this point. In the case under consideration all the property, real, personal and mixed, is devised to Carrie Williams for life, and at her death the said property, or so much thereof as may be in her possession at the time of her death, is given to Bettie Melton.

. Carrie Williams attempted to convey to the defendant in fee.

In the *Towles case,* William Shaw devised his land to his wife for life, and he devised to James Callum and Mary Callum "on the death of his wife, all the property, real and personal, belonging to his estate, which may be in possession at the time of her death." There was a codicil providing that sales should be made with the consent of the executors.

The wife attempted to convey in fee without the consent of the executors, and without reference to the power.

After holding that the deed was not valid because the executors did not consent thereto, the Court says: "In addition to this, when the donee of a power to sell has an estate of her own in the property affected by the power, and makes a conveyance of the property without reference to the power, the construction established by the decisions is that she intends to convey only what she might rightfully convey without the power. These doctrines are so generally accepted that we think no reference to the authorities is necessary. They may be found

cited in the brief of the counsel for the plaintiff. The deed to
Primrose conveyed only the life estate of Priscilla Shaw."

The rule seems to be well established, and it seems to me to
be meaningless if it be said that when one who owns an interest
with a power of disposition conveys more than he owns, with-
out reference to the power, that the conveyance will be referred
to the power.

If, however, these views are not sound, and by correct con-
struction the wife took a life estate under the will, with the
power to sell the land, I still think the deed to the defendant
is not good, because I do not think an exchange of lands was
contemplated, or that it would be a valid execution of the
power for the life tenant to convey the land devised to her for
life to her brother-in-law in fee, and receive in exchange there-
for a deed in fee for another tract of land.

WALKER, J., dissenting: This Court has repeatedly held, and
with decided emphasis, that the weightiest considerations de-
mand that the Court should adhere to its former decision in a
case, where it was made with unanimity and after full argument
and consideration. *Lewis v. Rountree,* 81 N. C., 20; *Ashe v.
Gray,* 90 N. C., 137; and it will not on petition, however earn-
estly and zealously pressed by counsel, reëxamine the same
authorities and reconsider the same course of reasoning in
order to reverse its previous ruling. *Dupree v. Insurance Co.,*
93 N. C., 237; *Hannon v. Grizzard,* 99 N. C., 161. No case
ought to be reheard upon petition, unless it was decided hastily
and some material point was overlooked, or some direct and
controlling authority was not called to the attention of the
Court, and was overlooked by it. *Watson v. Dodd,* 72 N. C.,
240; *Hicks v. Skinner, ibid.,* 1; *Devereux v. Devereux,* 81 N. C.,
12; *Haywood v. Daves, ibid.,* 8. In *Weisel v. Cobb,* 122 N. C.,
68, it was said that "rehearings of our decisions are granted
only in exceptional cases, as the highest principles of public
policy favor a finality of litigation, and even when granted,
every presumption is in favor of the judgment of the Court
already rendered," and, further, that where neither the record

nor the briefs on the rehearing of a case disclose anything that was not apparently considered at the first hearing, the judgment will not be disturbed. The present *Chief Justice,* in *Elmore v. R. R.,* 131 N. C., 576, strongly and earnestly inveighed against the prevalent and increasing tendency to ask for rehearings, and stated what he thought should be the invariable rule and the one established by more than a hundred decisions of this Court, that the purpose of a rehearing is not to consider the same facts, briefs, and authorities used on the former hearing. With all possible deference, I assert that we are doing that very thing now, as the sequel will show.

Nothing was brought forward on the rehearing but what we heard and knew before, viz., that there is some conflict in the authorities; but I do not think that I take much risk in stating that the great weight of authority in this country, if not in England, favors the judgment formerly rendered by this Court. The case was thoroughly and carefully considered by us, and it is manifest, from the opinion delivered by *Justice Manning*— one of the ablest and most learned, one of the most diligent and painstaking and exhaustive in investigation, of the judges who have ever sat in this Court—that no authority of importance was overlooked or disregarded. It is only a question now, as will be seen, whether we should follow our own decisions and the majority of the courts, or the minority of them. It may be remarked generally, and *in limine,* that the cases cited in the opinion now filed, as supporting the decision, have no application to the special facts of this case, but were rendered upon a state of facts substantially different.

Consider the case of *Giles v. Little,* 104 U. S., 291, the principal one relied on in the opinion of the Court, and we find that there was personal property of a kind which would be consumed by its use, and where the expression, "whatever may remain," is used in a limitation over, it was held as restricted to the consumable personal property, such as crops and provisions; and this testator had none of this sort. But even this view is rejected by some of the other courts, as not only changing the words, but as defeating the clearly expressed intention of the testator. In those cases where it is held that the *jus dis-*

*ponendi* is confined to the life estate given by the will, it appeared that there was no limitation over, and the language and nature of the devise required such a construction. A very few courts, confounding cases like ours with cases of that kind, have been misled into holding that where the general right to dispose of the property is given to the life tenant, with a limitation over of what remains, it is restricted to the life estate and does not extend to the fee. The fallacy of this reasoning is apparent when we consider that the life tenant has, by law, the right to dispose of the life estate, and did not require any authority or power from the testator to do so, and such a ruling makes the words as to the disposal useless and inoperative, contrary to the rule that we must sustain the will as a whole, giving effect to every part of it. The testator having devised the life estate, could not unreasonably restrict the right to dispose of it, which is a legal incident of it, and why should we say that he intended to give that right which she already had, rather than that which would be of some use and benefit to her? Why should we practically strike out words, rather than give them the only meaning they could reasonably have? The first and great rule in the exposition of wills, to which all other rules must yield, is that the intention of the testator, expressed in his will, shall prevail, provided it be consistent with the rules of law. *Smith v. Bell,* 6 Peters (U. S.), 68, and in seeking for the intention of the testator as to the construction or interpretation that should be placed upon ambiguous terms or clauses in a will, the relation of the parties, the nature and situation of the subject-matter, the purpose of the instrument, and the motives which might reasonably be supposed to influence him in the disposition of his property, may properly be considered. (*Smith v. Bell, supra;* 17 Am. and Eng. Enc. of Law, 2 Ed., p. 21; 17 Cyc., 673, and cases cited in each.)

In this case it appears that the testator owned the land, which was sold to the defendant, John H. Green, and a mule and wagon and, perhaps, a cart—things not consumed in their use. He gives, devises, and bequeaths all his property, real, personal, and mixed, of every kind, to his wife during her life, and at her death *the property,* or as much *thereof* as may then be *in*

*her possession,* to Bettie Melton. It is evident from the words used that the testator intended to give his widow the same use and benefit of all his property. There is nothing in this will or in the character and condition of his estate, or the state of his family, which authorizes the construction that he intended to restrict the words of limitation over to the personalty or the consumable part thereof, any more than to the real property, for his words are, "the said property (that is, real, personal, and mixed), or as much thereof (that is, the same property just described, it being the only meaning of this adverb) as may be *in her possession* at the time of her death, is to go to Bettie Melton." Is that not the only natural and reasonable construction of his language? He had the undoubted right to give her a life estate with the general power of disposal, and how more clearly could he have expressed such a purpose? When he says *"the said property,* or as much *thereof* as may be in her possession," how can we say that he did not mean all of the property, though he said so, but only a part? Suppose, as here, he had no consumable property by which she could support herself, such as crops or provisions, and she had no funds with which to make the other property available for her support and maintenance, must she starve for the want of power under the will to convert what he did give her into productive or consumable property? Was it intended by the testator to give his widow, who was entirely dependent upon his bounty, a stone when she needed bread? He must be supposed to have understood the situation and to have provided for her with reference to it. The plaintiff's own witness, F. G. Ward, testified that the property was "in such shape" that she could not make a living upon it, or it seemed to him that way. Any construction that prevents her from disposing of all the property would lead to the conclusion that her husband intended to give her something which, instead of being a benefit, would be a burden to her. It was held in *Hemingway v. Hemingway,* 22 Conn., 462, that the word "possessed" denotes ownership and not merely personal or corporal occupation. When the testator limited over the property—real, personal, and mixed—"in her possession at the time of her death," he clearly meant such as

she had not disposed of by sale or otherwise, for property which was in her actual possession, and under her control, would go to the remainderman anyhow.

It is better and safer to give effect to the words of the testator, and all of them, according to their natural sense and their accepted meaning, than to surmise that while he expressed himself broadly and comprehensively in favor of his dependent wife, so that his gift to her could take effect beneficially, he did not mean it, but something else that favors a remainderman, who was not his child, or even a blood relation, so far as appears; the first object of his care and bounty, it would seem, must be less considered than the second, so that the latter may enjoy the substantial benefit of the gift. The language of the Court in *Clark v. Middlesworth,* 82 Ind., 240, in construing a testamentary clause substantially like this one, is very significant in this connection: "We think it quite clear that the will of A. B. Clark gave to his widow, Mary A. Clark, a life estate in said lot, and that it also gave her, by the clearest implication, a power to dispose of the same. The words, 'and at her death, should anything remain,' are senseless and without meaning unless the testator intended that the tenant for life might, prior to her death, dispose of the property devised to her for life. The words show that he must have contemplated this at the time, and therefore have intended it." And so are the words of *Justice Connor* in *Parks v. Robinson,* 138 N. C., 269: "To restrict the power of disposal of her life estate would be to nullify its effect. She had such power incident to her life estate. To confine the power of disposal to such life estate would do violence to the rule of construction that every word used by the testator should be given force." That was held to be law by this Court, contrary to some of the authorities cited in support of the impending ruling, and, too, where there was no ulterior limitation. How much more does the construction now placed upon this will neutralize their meaning, if it does not literally excise the words used by the testator to express his desire in respect to his wife, who needed his help far more than the *feme* plaintiff. It has the effect of reading out of the

will something that we would expect him instinctively to put into it, and reading into it something that it would be unnatural for him to have willed, considering the admitted facts and circumstances. The difference between a gift for life with a power of disposal, express or implied, and without an ulterior limitation, and one with such a limitation, is stated in 30 Am. and Eng. Enc., pp. 737, 738, which is quoted by the Court in its opinion. In the latter case the estate is for life, and the remainder will take effect as to all property not disposed of, and as to this, the fee passes to the purchaser, the same as if the property had been given in fee, instead of for life, to the devisee and legatee; in other words, as said by *Judge Pearson* in *Troy v. Troy,* 60 N. C. (Hinsdale Ed.), 624, "the power is appurtenant to the life estate; and the estate created by its exercise will take effect out of the life estate, as well as out of the remainder." But it is useless to continue the argument in favor of the correctness of our former decision, as' it is so fully sustained by cases decided by courts of the highest authority, whose opinions are respected and followed everywhere, and by text-writers. "Although a devise be expressly for life of a devisee, yet if the devisee be, by other clauses of the will, permitted to use and dispose of the subject absolutely at his pleasure, or if so much as may remain undisposed of by him at his death (which implies a power of unqualified disposition) be given over at his decease, the devisee is construed, by a necessary implication of the testator's intention, to take a fee simple." 2 Minor's Insts., 969, 970. So in *Madden v. Madden,* 2 Leigh, 377, in an able and exhaustive review of the cases on the subject, it was ruled to be settled law that, "Whenever there is an interest given, coupled with an absolute power of disposition in respect to all property of every description, real and personal, the first taker would have the absolute property, and that there was no distinction between a case of a gift for life, with a power of disposition added, and a gift to one indefinitely, with a superadded power to dispose of by deed or will."

In *Farish v. Wayman,* 91 Va., 430, the estate was to Agnes Redd for life, with this provision, "Should she die without leaving a child, in that case the property, or what remains of

the same, to go to Nancy Massie," and it was held that she could dispose of it absolutely in fee, the Court saying: "This language cannot be reasonably construed otherwise than that the devisee under it has not only the power to use this property, but to consume it, if she will. The gift over at her death of what 'may remain of the same' shows that the testator intended, notwithstanding the direction that the property was to be held by the trustees named, during her natural life, that she should have the power to dispose of, consume, or spend it in her lifetime, which she could only do by being invested with the fee simple. What might remain of the same was all that was to go over. The language forcibly implies an unlimited and unqualified power of disposition. The devisee could acquire no greater estate, nor exercise greater power over it. To put any restriction upon her absolute dominion over it would be to say that the whole, or some part of it, should go over to the second taker, when the will expressly says that only 'what may remain of the same' shall pass to the second taker." To the same effect is *Clark v. Middlesworth,* 82 Ind., 240, in which the testator gave all his real and personal estate to his wife for life, and at her death, if anything remained, the same to be divided among his heirs at law. The same Court followed this decision in *Silvers v. Canary,* 109 Ind., 267, where the clause of the will was substantially like that we are construing in this case. It was held that the wife, to whom the real and personal property were given for her life, had power to convey the fee in the land, and might do so without referring to the will.

It seems to me that the reasoning in *Panill v. Barnes,* 100 Mass., 470, is directly applicable to this case. The property willed was real and personal, and the Court said that, upon the authorities, the meaning of the phrase, if anything should remain in connection with the devise of a remainder of real property after an estate for life, would imply a power to convey, as otherwise there could be no reason for the doubt whether the estate would remain. There are many other cases of the same purport, but as a number of them are reviewed in the former opinion of the Court, it is not necessary to comment upon them. It seems to me, also, that this case may be distinguished from

those cited in the opinion of the Court by the fact that the testator uses the word "possessed" or "in her possession," thereby necessarily implying, not as the word "remain" or "remaining" may, perhaps, be construed, that she might dispose of some, if not all, of the property, real and personal, and it might not, at her death, be "in her possession"—that is, owned and held by her. I do not find that word used in any will construed in the cases on this subject.

If I were at liberty to discuss the evidence to be found in the record, the intention of the testator, as it was adjudged to be at the former hearing, would be made manifest. *Williams v. Parker,* 84 N. C., 90, and *Brawley v. Collins,* 88 N. C., 605, have no bearing at all upon the question in this case. They only decide that "personal property" was intended, where the word "property" was used, because of the association of the latter with other words which clearly indicated such a purpose, and in *Brawley v. Collins, Chief Justice Smith* said that the word "property" would embrace all kinds—real and personal and mixed—unless its meaning is restricted by the context, citing *Foster v. Craig,* 22 N. C., 199. The words in this will are more indicative of a purpose to include all kinds of property, real, personal, and mixed, for those very words are used, and they are followed by these, "the *said property* or as much *thereof* as may be in her possession at the time of her death." The word "property," as thus used, manifestly refers to the kind just above enumerated, and this interpretation is directly warranted by what is said in the cases just cited. So that they are authorities, in my judgment, against the present conclusion of the Court. Each case must be determined by its own facts. Where, therefore, it appears from the context of the will under construction that the testator, in using the word "property," referred to both kinds, real and personal, the word, as this Court said, *must* have that meaning. That is our case exactly. If the words of the will, when considered with the context, or with the circumstances surrounding the testator at the time it was written, show that he must have intended to include real estate in the term "property," it must have that meaning, and this should be so even though there are consumable things.

HERRING *v.* WILLIAMS.

I may be permitted to add to the authorities above cited, the recent case of *Underwood v. Cave,* 179 Mo., 1, decided by one of the ablest courts of the Union, and in which I find the following: "It is my will that the property, real and personal, hereby bequeathed to my wife, shall be hers absolutely during her natural life, to use and enjoy as she may see proper, and at her death, if there should be anything left, my will is that it be vested and applied to the use of the Lone Jack Baptist Church, used as may be thought most conducive to the advancement of the Christian religion." It was held that the wife took a life estate, with superadded power to dispose of the fee, and that the exercise of the power by her cut out the remainderman. So in *Burford v. Aldridge,* 165 Mo., 419, we find a still stronger authority and a case more like ours. The clause of the will was as follows: "I will, devise, and bequeath to my beloved wife, Sarah, all of my property, personal, real, and mixed, that may be left after paying the above bequests, to use and manage as she may deem best as long as she may live; and at her death, I desire and so will, that what may be left of my estate after her death shall be divided equally between my two brothers, Emsley Wharton and John G. Wharton, and my sister, Eliza Plummer, and by brother-in-law, D. W. Burford." In commenting on this language in the will, *Judge Valiant* says: "But under this will the widow was entitled to consume as much of the estate as she desired, the body as well as the product. And, on the other hand, if she lived within the rents and interest and left a surplus of that, there is at least room for contention that such surplus would not have gone to her administrator on her death, but to the remainderman under the will. Therefore, whilst she was in a sense a trustee of the property for the use of the remaindermen, yet she had a very substantial interest in it, and the remaindermen could not call her to account or restrict her in amount in what she chose to expend for her own gratification, even though it consumed the whole estate, as long as good faith was preserved." "If we seek admittance into the family circle and learn the relations and feelings of the testator towards each of the beneficiaries of his bounty" and follow the controlling rule in the construction of

wills, to which all technical rules should give way, and give effect to the true intention of the testator, as the same may be gathered from the whole instrument, if not violative of some established rule of law, and in arriving at that intention, if we take into account the relation of the testator, not only, as we have said, his relations to the beneficiaries, but also the conditions and circumstances surrounding him at the time of the execution of his will, reading it, as near as may be, from his standpoint, and giving full effect, if possible, to every clause and portion of it, we cannot conclude otherwise than that he intended his wife to be the first object of his bounty and to provide for her a comfortable and sufficient support, without hampering her in the use and enjoyment of the property, but allowing her to deal with it, in her own way, as her necessities might require, and leaving only what might be left of it to the remaindermen.

It is said, though, that there was error in the former decision, because we overlooked the fact that the deed to Green did not refer to the will or the power. This is a misapprehension as to the nature of this power of disposal. "It has repeatedly been held that where a person having power to convey the fee-simple estate, and also having a life estate or other interest, executed a conveyance of the fee, the deed will be referred to the execution of the power (or *jus disponendi*), because otherwise it cannot take full effect according to its terms." 31 Cyc., 1125. The case referred to in the opinion of the Court is presented where there is an estate which is coupled with a power disconnected therewith, in which the donee has no beneficial interest. In such a case it will be presumed that the deed is intended to pass the interest and not to execute the power, unless the latter is in some way referred to in it. Besides, in this case, we are dealing with the *jus disponendi,* and not with a technical power, or a naked power of appointment. The case of *Grace v. Perry,* 197 Mo., 550, is directly in point and holds that no reference to the will was necessary to constitute a good and valid exercise of the power. See, also, *Underwood v. Cave, supra.*

It is suggested that *Towles v. Fisher,* 77 N. C., 437, is an authority for the position that the deed of the testator's widow conveys only a life estate, because it does not refer to the power contained in the will. That case is in perfect accord with the law, as I have before stated it to be. In *Towles v. Fisher* the testator conferred upon his wife, Priscilla, the power of appointment to "charitable or religious" uses and, by a codicil, the power to sell and dispose of any part of the land by and with the consent and advice of his executors, and the Court very correctly held that it was necessary to have the consent of the executors and to refer to the power in her deed, for otherwise it would only pass the life estate. But it cannot be successfully argued from the construction of the provision of *that* will, that a reference to the will in her deed was required in order to a valid exercise of Mrs. Williams' right of alienation or *jus disponendi,* for that is what it is, and all that it is. If we hold otherwise, it seems to me, with all due deference, that we will be out of line with the controlling authorities upon the subject, both text-writers and cases. But it is very evident from the language of the Court in *Towles v. Fisher* that the words, "all the property, real and personal, belonging to my estate, which may be in her possession at the time of her decease (shall go over) and be equally divided between James and Mary Collum," would have conferred upon his wife, Priscilla, the absolute right of alienation in fee, but for the other provisions which are inconsistent with the existence of such a right and which are not in the will of W. B. Williams, the testator in this case. It would not have been necessary, in order to meet the contention of the plaintiffs in that case, to have referred to the express and inconsistent power given by the will to be exercised only with the consent of the executors, if the Court had thought that she did not have the right of disposal under the words of the will which we have quoted. The clear inference from the course of *Justice Rodman's* reasoning is that such words would confer the right to sell and convey in fee; otherwise he would have sufficiently answered the argument of the plaintiffs by simply stating that it did not, irrespective of any other clauses of the will.

REA *v.* MIRROR Co.

We have not adverted to the fact, which was mentioned in our former opinion, that this is an action of waste, alleged to have been committed on the land devised, and is not one for the recovery of the tract of land which was received by the widow in exchange, or as the consideration for the land she conveyed. Surely, the testator did not intend to subject her to an action for waste.

My conclusion is that the former decision, being right, should be approved, and that the petition should be dismissed.

HOKE, J., concurs in the dissenting opinion of WALKER, J.